UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **STACEY RYAN, ET AL** | **:** | **DOCKET NO. 17-cv-287** |
| **VERSUS** | **:** | **JUDGE MINALDI** |
| **CALCASIEU PARISH POLICE JURY, ET AL** | **:** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand and Motion for Attorney's Fees [doc. 8] filed by plaintiffs Vernon Christopher Meyer and Carla Michelle Meyer ("the Meyers"). Defendant Sasol Chemicals USA, LLC ("Sasol") opposes the motions. Doc. 13. For reasons provided below, **IT IS RECOMMENDED** that the Motion to Remand be **GRANTED** and Motion for Attorney's Fees be **DENIED**.

**I.**
**BACKGROUND**

*A. State Court Procedural History*

This action relates to Sasol's ethylene cracker expansion project in Calcasieu Parish, Louisiana. *See, e.g.*, doc. 8, att. 1, p. 7; doc. 1, p. 6 n. 12. The case originated with Stacey Ryan's petition filed in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, on October 16, 2014. *See* doc. 7, att. 1, pp. 2–8. Ryan sought declaratory and injunctive relief against the Calcasieu Parish Police Jury ("CPPJ") and the Calcasieu Parish Planning and Zoning Board (the "Planning and Zoning Board") in an appeal of the Planning and Zoning Board's denial of his request for

exemption after his family property in the unincorporated community of Mossville was rezoned, at Sasol's request, from residential to heavy industrial use. *Id.*

On January 8, 2015, Ryan amended his petition to add the Lake Charles Harbor and Terminal District (the "Port") as defendant and seek injunctive relief against the Port's anticipated expropriation of his property. Doc. 13, att. 7, pp. 1–8. There Ryan alleged that, in November 2014, the Port Board had passed a resolution authorizing the expropriation of that property "for sale or long term lease" to Sasol. *Id.* at 5.

The Meyers were granted leave to intervene in this suit on January 15, 2015, also naming the Port as defendant. Doc. 7, att. 1, pp. 25–30. In their petition for intervention they stated that they are residents of Louisiana and requested declaratory and injunctive relief on the Port's anticipated expropriation of their five-acre property in Westlake, Louisiana, for the benefit of Sasol. *Id.* at 25–28. They also made reference to the allegations in Ryan's petition referencing the November 2014 resolution. *Id.* at 26. However, like Ryan, they raised no claims against Sasol. *Id.* at 25–28. Thereafter, on May 7, 2015, Ryan was granted leave to file a second supplemental and amending petition, naming Sasol as a defendant and asserting claims for declaratory and injunctive relief related to sewage and water services to the Ryan property under the development agreement between the CPPJ and Sasol. Doc. 7, att. 4, pp. 121–30. Ryan subsequently amended his petition again to join his sisters, Denene Ryan-White and Yelena Ryan, as co-plaintiffs. Doc. 7, att. 5, pp. 74–82. On November 6, 2015, the court granted the Ryan siblings' motion to dismiss their claims against Sasol without prejudice. Doc. 13, att. 7, p. 71.

On August 26, 2016, Sasol intervened in the suit for the purpose of preventing disclosure of its settlement agreement and related communication with the Ryans. *See id.* at 73–82. After the trial court denied Sasol's request, Sasol was again dismissed from the suit on October 18, 2016.

*Id.* at 90–92. Prior to this dismissal, however, Sasol was once again brought into the suit when the Meyers filed their second supplemental and amended petition on October 5, 2016, naming Sasol as a defendant.[1] *See id.* at 97–103.

### B. *Meyers' Claims Against Sasol*

In their second supplemental and amended petition for intervention,[2] the Meyers state that their five-acre property, which contains their homestead and their business, M&D Construction, is within Sasol's project area. Doc. 13, att. 7, p. 100. They allege that Sasol violated Article 748 of the Louisiana Civil Code, which sets a general prohibition against the owner of a servient estate doing anything "tending to diminish or make more inconvenient the use of a servitude." *Id.* at 101; *see* LA. CIV. CODE art. 748. In support of this claim, the Meyers alleged that Sasol had disconnected telephone service to their property for the past four months and done the following:

17.

Further, by letter dated January 22, 2013, Sasol advised [the Meyers] of the "temporary closure" of Matheson Road; provided them with a map of the access route through Sasol's property to their Property, and informed them that this would only continue until May 1, 2016. One week later, Sasol was notified that [the Meyers] did not agree with or consent to the relocation of their right-of-passage to their Property. Their disapproval, however, was ignored by Sasol.

18.

Since February of 2016, [the Meyers], their visitors, and M&D Construction's customers have had to use the same access route as thousands of Sasol's construction workers and vendors. Most days, it takes more than thirty minutes to arrive at their Property from Houston River Road, and [the Meyers] are constantly stopped and questioned by guards at the gate.

---

[1] Neither Sasol nor the Meyers identify the date that Sasol was served with this pleading, but it presumably occurred on or shortly after October 5, 2016, since Sasol had not yet been dismissed from the suit based on its August 2016 intervention.

[2] The Meyers amended their petition for intervention for the first time on June 25, 2015, in order to add a claim against the Port seeking declaratory relief that the Port Board's November 2014 resolution violated the Louisiana Constitution. Doc. 13, att. 7, p. 13.

19.

> In addition, [the Meyers] have been unable to receive packages shipped and/or mailed to their Property since the alleged "temporary closure" of Matheson Road. Virtually all attempts by UPS and other carriers to locate the Property have failed, and [the Meyers] receive notification that their delivery address is incorrect.

Doc. 13, att. 7, pp. 100–01. The Meyers are thus seeking an injunction requiring Sasol to remove impediments, restore convenient access, and reconnect telephone and basic services to their property. *Id.* at 102. They also state that they are entitled to "damages caused by Sasol and related to loss of business, interruption of services, restricted and inconvenient access to their property, mental anguish and for any other related pecuniary or non-pecuniary damages." *Id.*

On January 18, 2017, Vernon Meyer ("Vernon") was deposed and elaborated on his damages. *See* doc. 1, att. 4. Sasol then removed the case to this court on February 17, 2017, on the basis of federal diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. It maintains that complete diversity of citizenship exists based on the fact that the Meyers, Stacey Ryan, and Denene Ryan-White are citizens of Louisiana,[3] and Yelena Ryan is a citizen of Florida.[4] Sasol is a citizen of Delaware and Texas. Doc. 1, p. 5. The Port, CPPJ, and the Planning and Zoning Board are citizens of Louisiana as political subdivisions of the state (*Id.*; *see* doc. 7, att. 4, p. 121); however, Sasol alleges that the citizenship of these defendants should be ignored under the doctrine of fraudulent misjoinder and that this doctrine excuses Sasol's failure to obtain consent of the non-diverse defendants. Doc. 1,

---

[3] *See* doc. 7, att. 1, pp. 2, 25 (Stacey Ryan state court petition and Meyers' petition for intervention); doc. 1, att. 2, p. 2 (deposition of Denene Ryan-White). Sasol notes that, on March 10, 2017, the Ryans and the defendants successfully mediated all of the Ryans' remaining claims and that these will soon be dismissed, leaving the Meyers as the only plaintiffs in this action. Doc. 13, p. 10 n. 19 and accompanying text. It is well settled that removal jurisdiction is judged based on the claims in the state court complaint at the time of removal. *Manguno v. Prudential Prop. & Cas. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). At any rate, the Ryans' presence in or absence from this suit would not alter the diversity of citizenship analysis, as Louisiana citizenship remains shared by the Port and the Meyers and Sasol seeks to have the claims brought against it by the Meyers in their second amended petition severed for fraudulent misjoinder.
[4] *See* doc. 1, att. 3, pp. 2–3 (deposition of Yelena Ryan).

pp. 5–9, 12–14. Sasol maintains that it first ascertained that the amount in controversy exceeded $75,000 from Vernon Meyer's deposition testimony, and that the transcript is thus "other paper" forming the basis of removal. *Id.* at 12. It also asserts that the Meyers acted in bad faith to prevent removal, meaning that the one-year time limit under 28 U.S.C. § 1446(c) does not apply to this case. *Id.* at 14.

The Meyers now move to remand, asserting that fraudulent misjoinder does not apply to this case and that Sasol has failed to show that the amount in controversy exceeds $75,000. They therefore maintain that the matter should be remanded for lack of subject matter jurisdiction and because it was untimely removed, and that they are entitled to costs and fees associated with the removal under 28 U.S.C. § 1447(c). Doc. 8.

## II.
## LAW & ANALYSIS

### A. Motion to Remand

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Removal jurisdiction is judged based on the state court complaint as it existed at the time of removal. *Cavallini v. State Farm Auto Mutual Ins. Co.*, 44 F.3d 256, 263–64 (5th Cir. 1995).

"Fraudulent misjoinder" is a type of improper joinder that exists when a diverse defendant is joined with a non-diverse defendant and the claims against the two defendants have no real connection between them. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996),

*abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).[5] In order to determine whether claims have been fraudulently misjoined, the court first applies the joinder rules of the state courts. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 381 (S.D.N.Y. 2006).

Article 463 of the Louisiana Code of Civil Procedure is the relevant state joinder rule in this case. It provides that

> [t]wo or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
>
> (1) There is a community of interest between the parties joined;
>
> (2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3) All of the actions cumulated are mutually consistent and employ the same form of procedure.

LA. C. C. P. art. 463. As the Meyers point out, they have made claims for injunctive relief against both the Louisiana defendants and Sasol, based on a piece of property lying within the state trial court's jurisdiction. Therefore the second and third prongs are met and the deciding factor is whether there is a community of interest between the two causes of action.

The Louisiana Supreme Court defines "community of interest" as "the parties' causes of action (or defenses) 'arising out of the same facts, or presenting the same factual and legal issues.'" *Stevens v. Bd. Of Trustees of Police Pension Fund of Shreveport*, 309 So.2d 144, 147 (La. 1975) (quoting Official Revision Comment (c), Article 463). A community of interest exists between different actions or parties where there is enough factual overlap between the cases that it is "commonsensical" to try them together. *Mauberret-Lavie v. Lavie*, 850 So.2d 1, 2 (La. Ct. App. 4th Cir. 2003).

---

[5] Although the Fifth Circuit has only expressed tacit approval for this doctrine, it has widespread acceptance in district courts within the circuit and has been applied multiple times in this district. *See Constance v. Austral Oil Exploration Co.*, 2013 WL 495781, *5 (W.D. La. Feb. 6, 2013) (collecting cases).

As Sasol points out, the relief sought against the Port is confined to: (1) declaring that the Meyers' property is not subject to expropriation; (2) declaring that a Port resolution is unconstitutional; and (3) preliminary and permanent injunctions barring the Port from expropriating the Meyers' property. Meanwhile, the claims against Sasol seek to have the court (1) require Sasol to remove impediments, reconnect utilities, and restore the Meyers' servitude of passage; and (2) award damages for mental anguish and interference with the Meyers' business. Sasol contends that the only common fact present in these claims is that the Meyers own property in Calcasieu Parish. Doc. 13, pp. 17–18. Thus, Sasol argues, there is no community of interest between the Meyers' claims against Sasol and their claims against the Port.

The Meyers contend that there is a community of interest, alleging that collusion between the Port and Sasol to force the Meyers off of their land is the basis of the entire suit. As Sasol points out, there are no allegations of conspiracy in any of the pleadings and no unity between the remedies sought. The Meyers instead rely on agreements between Sasol and the Louisiana defendants showing that those defendants were acting on Sasol's behalf. *See* doc. 8, atts. 19 & 20. They also insist that the facts and evidence here "are intricately intertwined and all arise from a single set of operative facts; the Port and Sasol's joint effort to force the Meyers from their Property."[6] Doc. 8, att. 1, p. 19.

Sasol asserts that we may not consider the evidence of collusion included in the motion to remand as the facts supporting jurisdiction must be evaluated based on the record as it exists at the time of removal. *E.g.*, *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999). The

---

[6] The Meyers also point out that this is Sasol's second time in the action as a defendant (and third time as a party), and yet Sasol has never raised the issue of improper cumulation in the state courts as it is authorized to do under Article 926 of the Louisiana Code of Civil Procedure. Doc. 8, att. 1, p. 19. Sasol, however, maintains that the reasons behind the alleged fraudulent misjoinder only became clear during a hearing on February 10, 2017, on the Meyers' Motion to Compel, after Sasol withheld documents sought by the Meyers that were allegedly linked to the expropriation claims rather than the servitude interference claims. Doc. 13, pp. 11–12. The Meyers do not refute this point. Accordingly, we do not assign weight to Sasol's failure to file an exception of improper cumulation in state court.

scope of inquiry in improper joinder does allow the court to pierce the pleadings and consider summary judgment-type evidence, but only in order "to determine whether the plaintiff has a basis in fact for a claim." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). Here there is no allegation of collusion or conspiracy in the pleadings. Therefore, as the Meyers failed to raise any such claim prior to removal, or otherwise show a "joint effort" sufficient to support a community of interest between the parties, we agree that the matters are misjoined. The next step, then, is analyzing whether the misjoinder was fraudulent.

As the Eleventh Circuit noted in *Tapscott*, not every instance of "mere misjoinder" rises to the level of fraudulent misjoinder.[7] 77 F.3d at 1360. "Only the most 'egregious' instances of misjoinder rise to the level of fraudulent misjoinder: those in which the 'wholly distinct' claims of, or against, the non-diverse parties are so lacking any 'real connection with the controversy' that their joinder 'border[s] on a sham.'" *Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (quoting *Tapscott*, 77 F.3d at 1360)) (alterations in original).

Sasol does not meet this threshold. Earlier pleadings by both Stacey Ryan and the Meyers allege that the Port's attempts at expropriation are for Sasol's benefit. A palpable connection exists between the claims, as they relate to the same property and property owners, and actions undertaken by one party for the benefit of another to gain control of that property.[8] Therefore the

---

[7] Sasol notes that "several courts have severed misjoined claims even without a finding of egregiousness." Doc. 13, p. 20 n. 81. That is not the interpretation of *Tapscott* followed in this court, however. *See, e.g.*, *Augustine*, 2010 WL 4930317, *15 (W.D. La. Nov. 30, 2010).

[8] In so finding, we distinguish this matter from two earlier cases, pointed out by Sasol, in which we held that claims against a non-diverse party were fraudulently misjoined.

In *Augustine v. Employers Mutual Casualty Co.*, the plaintiffs brought claims against their property insurer, a foreign corporation, for its handling of claims relating to losses on the insured properties after Hurricane Rita. 2010 WL 4930317 (W.D. La. Nov. 30, 2010). They also named as defendants Don Simons, "a Louisiana sole proprietor of various named entities," and US Solid Wall, LLC, "a Louisiana liability company," alleging that they were liable to the plaintiffs under contracts through which they had purchased the properties and the rights to the insurance proceeds from the plaintiffs, and agreed to repair the properties and return them in usable condition to the plaintiffs. *See id.* at *1–*2. We found that the motion to remand should be denied on the basis of improper joinder due to actual fraud in the pleading of Simons' citizenship and through extension the limited liability corporations to which he was connected. *Id.* at *6–*8. We also noted in dicta that the claims were fraudulently misjoined based on our determination that

joinder of these claims was not egregious, particularly as further discovery may or may not yield a sufficient factual basis for the collusion/conspiracy allegations made in this motion. Thus the doctrine of fraudulent misjoinder cannot be used to sever the claims against Sasol from the rest of the suit and justify removal. Accordingly, the motion to remand should be granted.

### B. *Motion for Attorney's Fees*

When a court grants a motion to remand, it may also require that the removing party pay costs and attorney's fees associated with the removal. 28 U.S.C. § 1447(c). Such an order is justified if the court finds that that party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 126 S.Ct. 704, 711 (2005). Here we agree that the claims were misjoined, and the egregiousness or lack thereof is not so obvious an issue as to render removal unreasonable. Therefore the motion for attorney's fees should be denied.

### III.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the Motion to Remand be **GRANTED** and the Motion for Attorney's Fees be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed

---

"[a]lthough the claims derive from a common factual episode—Hurricane Rita—the legal issues are entirely distinct, the relief sought is different, and the discovery issues completely separate." *Id.* at *16.

In *Frankland v. State Farm Fire & Casualty Co.*, a plaintiff also brought suit against her property insurer, a foreign corporation, for its handling of claims relating to losses on insured properties after Hurricane Rita. 2008 WL 4072819 (W.D. La. Jul. 2, 2008). To that action she joined against a private insurance adjustor and resident of Louisiana, with whom the plaintiff had contracted to handle her hurricane-related insurance claim. *Id.* We determined that the claims against the adjustor and the insurance company had been fraudulently misjoined, due to the differences between the legal issues and the relief sought, as well as the lack of overlap in discovery issues. *Id.* at *5.

Sasol alleges that, like the plaintiffs in *Frankland* and *Augustine*, the Meyers have "cobbled together two separate actions that happen to concern a common property." Doc. 13, p. 19. Here the relationship between the Port and Sasol as it relates to the Meyers' property is what separates this matter from the finding of fraudulent misjoinder in the above cases. Although the record does not support a community of interest, the relationship imbues the claims with a sufficient connection to make it an instance of mere misjoinder.

factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE this 26th day of May, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE